MARGARET QUIMBY & another[1] vs. EASTERN MASSACHUSETTS
STREET RAILWAY COMPANY.

Essex.    May 3, 1955. — July 6, 1955.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Negligence, Motor vehicle, Contributory.*

Evidence of the circumstances in which a bus travelling on a winter
afternoon on an icy and slippery street narrowed by snow piles stopped
suddenly at an intersection of another street, whereupon an automo-
bile which was following the bus "slewed" and skidded into the rear
of the bus, warranted a finding of negligence on the part of the opera-
tor of the bus toward the operator of and a passenger in the automo-
bile, who were injured in the collision, and did not require a finding of
contributory negligence on the part of either of the injured persons.

TORT.   Writ in the Central District Court of Northern
Essex dated June 1, 1951.

Upon removal to the Superior Court, the action was tried
before *Swift*, J.

*John Z. Doherty*, for the defendant.

*Alcide R. St. Onge*, for the plaintiffs.

COUNIHAN, J.   This is an action of tort to recover for
personal injuries sustained by the plaintiffs by reason of
the alleged negligence of the defendant.   The answer was a
general denial and an allegation of contributory negligence.
There were verdicts for the plaintiffs.   The case comes here
upon the exception of the defendant to the denial of its
motion for directed verdicts.

The defendant contends that the motion should have been
granted on the ground (a) that the evidence did not warrant
a finding of negligence on the part of the defendant or
(b) that the plaintiffs were guilty of contributory negligence.
There was no error in the denial of the motion.

[1] Bertha Carter.

In the aspect of the evidence most favorable to the plaintiffs, the jury could warrantably have found the following facts: On January 8, 1951, at about three o'clock in the afternoon, one of the plaintiffs, Margaret Quimby, was driving an automobile owned by her on Groveland Street in Haverhill. The other plaintiff, Bertha Carter, was seated on the front seat to the right of the operator. Mrs. Quimby overtook a bus of the defendant just as it started up after stopping at Mechanic Street. The bus proceeded easterly on Groveland Street at a rate of speed of eighteen to twenty miles an hour. The automobile followed it at a distance of forty to forty-five feet at the same rate of speed. It had snowed earlier that day and Groveland Street was icy and slippery. Snow was piled up on each side of the street, narrowing the travelled part of the way. Mrs. Quimby had lived in Haverhill for thirty-seven years and was familiar with Groveland Street. She knew of no bus stop at the intersection of Haverhill and Groveland streets. The next stop for buses travelling easterly was five hundred feet east of Haverhill Street. The bus travelled about one thousand feet from Mechanic Street, and just as the front of it reached the westerly intersection of Haverhill Street it stopped "very shortly" and "quick." Mrs. Quimby had been watching the bus before it stopped and she saw no hand signals and "no lights at all." There were stop lights on the rear of the bus but they were covered with snow. The bus stopped practically in the middle of the road — "just a little to the right of the road." There were automobiles approaching from the opposite direction which prevented her from driving to the left of the bus. The brakes on the automobile were in excellent condition and there were new snow tires on the rear wheels. When she saw the bus stop "very short" and "quick" Mrs. Quimby applied her brakes. She did not "jam" her brakes on. The automobile "slewed" on the icy street and skidded into the rear of the bus. She saw no one get off the bus after it stopped. The other plaintiff was watching the bus as it approached the intersection. It made "a very quick stop, a very short stop, an

instantaneous stop" in the center of the right hand side of the road, and it did not pull over to the side of the road before stopping. She exclaimed "Oh, Margaret" when the bus came to the sudden stop. The operator of the bus did not know that the automobile was following the bus and he did not look to see if any vehicle was behind it before he stopped. Both plaintiffs were injured as a result of the collision.

We are of opinion that the situation in the case at bar is largely controlled by what this court recently said in *Turcotte* v. *DeWitt*, 332 Mass. 160, 162, "The judge did not err in denying the defendants' motions for directed verdicts. True, there was evidence which would have warranted a finding that there was no negligence on the part of the operator of the van or that the deceased was guilty of contributory negligence, but the jury were not obliged to believe it. On the evidence most favorable to the plaintiff it could have been found that the van collided with the . . . automobile on the westerly lane, which would be the deceased's right hand lane. If the jury believed that the accident occurred at this point in the road they could have found negligence on the part of the operator of the van. The question was one of fact for the jury to decide." See *Howes* v. *Kelman*, 326 Mass. 696, 697.

"Evidence of a rear end collision without evidence of the circumstances under which it happens is not proof of the negligence of the operator of either vehicle, and the rule of res ipsa loquitur does not apply, but slight evidence of the circumstances 'may place the fault.' *Jennings* v. *Bragdon*, 289 Mass. 595, 597." *Buda* v. *Foley*, 302 Mass. 411, 412–413. Compare *Warren* v. *Howe*, 332 Mass. 213, 214. In the case at bar there was more than slight evidence to "place the fault" on the operator of the bus.

The case of *Hladick* v. *Williams*, 292 Mass. 470, involved a rear end collision under circumstances much similar to those in the case at bar. At pages 472–473, the court said, "Upon the evidence the trial judge could have found that . . . the defendant's automobile was partly over the line of

intersection and came to a sudden stop without any signal
being given by the defendant, by putting out his hand or
otherwise, that he intended to stop;[1] . . . that he did not
look in the mirror on his car to see whether any automobile
was coming behind him; that the plaintiffs were in the ex-
ercise of due care; and that the defendant was negligent."
The question of the contributory negligence of Mrs. Quimby
was one of fact to be determined by the jury.

We are of opinion that it could not have been ruled as
matter of law that Mrs. Carter was guilty of contributory
negligence. She was a passenger on the front seat of the
automobile, and that she was watching out for her safety
is evidenced by her exclamation of "Oh, Margaret" when
the bus stopped. *Bessey* v. *Salemme*, 302 Mass. 188, 210.

*Exceptions overruled.*

---

[1] See now G. L. (Ter. Ed.) c. 90, § 14B, inserted by St. 1951, c. 649, effective
November 27, 1951. This statute was amended by St. 1952, c. 321, by adding
a penalty clause.