MARY A. WATSON vs. FRANK SALVONI & others.[1]

No. 88-P-657.

Norfolk. February 17, 1989. — August 23, 1989.

Present: PERRETTA, KAPLAN, & KASS, JJ.

*Practice, Civil,* Summary judgment. *Negligence,* Moped, Parent. *Moped.*

In a civil action in which the plaintiff, who had been struck and injured by a
   moped, alleged that the parents of a fifteen year old boy negligently
   entrusted the moped to the boy, the parents' motion for summary judg-
   ment was properly allowed where the undisputed facts, as they appeared
   in materials before the judge, showed that the parents had prohibited
   their son from using the moped except in their yard and in their presence
   and that they had no reason to believe that he would disobey this rule.
   [737-738]

CIVIL ACTION commenced in the Superior Court Department
on November 5, 1984.

The case was heard by *J. Harold Flannery,* J., on a motion
for summary judgment.

*Gerald F. Blair* for the plaintiff.

*Joan M. Griffin (Terrance J. Hamilton* with her) for Frank
Salvoni & another.

PERRETTA, J. On the evening of August 5, 1983, Frank and
Carol Salvoni (the parents) were in Natick at their primary
residence. Their fifteen year old son, Frank, Jr., was at their
summer home in Falmouth with his grandmother. The son
decided to visit his friend, James Gilberto, then thirteen years
of age. Without telling his grandmother or asking her permis-
sion, Frank, Jr., took his mother's moped and drove to the
Gilberto cottage. Upon his arrival, he left it unlocked in the
driveway and went into the house. Gilberto then took the moped
for a ride. He struck and injured the plaintiff. On the parents'

[1] Carol Salvoni, Frank Salvoni, Jr., and James P. Gilberto.

motion brought under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), the judge dismissed those counts alleging parental negligence and vicarious liability.[2] Judgment entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). Because the undisputed facts show that the parents had prohibited their son from using the moped except in their yard and in their presence and that they had no reason to believe that he would disobey this rule, we affirm.

I. *The Undisputed Facts.*

We recite the facts as they appear in the materials submitted to the judge on the parents' motion. Owned by the mother since 1979, the moped had been used by the parents primarily on camping trips to bring groceries from the store to the family campsite. In the summer of 1983, the parents kept the moped in a shed next to their summer cottage in Falmouth. When the moped was in the shed, its front wheel was locked, as was the door to the shed. The family members knew that the keys to the moped wheel and the shed door were kept in a closet in the cottage.

Although the parents sometimes allowed their two older children, who had driving permits, to use the moped, such permission was denied Frank, Jr. The only time Frank, Jr., was allowed to ride the moped was upon the permission of a parent, and then only in the yard of the cottage and in the presence of one of them. Neighborhood children were not allowed to use the moped, nor were they allowed on the property when Frank, Jr., was riding in the yard.

Several years prior to 1983, Frank, Jr., was given a minibike by his parents. They allowed him to use the minibike in his Natick yard (about an acre in size) and sometimes on trails located behind the garages of his father's transportation company.

On the evening that Frank, Jr., took the keys from the closet and drove the moped to the Gilberto cottage, his parents were not in Falmouth. Although his grandmother was at the cottage,

---

[2] The plaintiff makes no argument on appeal concerning her claims of vicarious liability. The appeal is deemed to have been waived on these counts. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Frank, Jr., did not seek her permission to take the moped nor did he tell her that he was going to use it. There is nothing in the submitted materials which shows that prior to August 5, 1983, Frank, Jr., had ever operated his minibike or the moped on streets or against his parents' instructions or that, if he had, the parents knew of any such infraction.[3]

II. *Parental Liability.*

We consider the facts recited in a light most favorable to the plaintiff, the opponent of summary judgment, to determine whether there exists a genuine issue of material fact on the claim of parental negligence. See *Brunson* v. *Wall*, 405 Mass. 446, 448 (1989); *Orfirer* v. *Biswanger*, 25 Mass. App. Ct. 928, 929-930 (1987).

To prevail on her claim of negligent entrustment, the plaintiff would have to show, among other things, that the parents permitted Frank, Jr., to use the moped. See *Leone* v. *Doran*, 363 Mass. 1, 7, partially vacated on other grounds, 363 Mass. 886 (1973); *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 606 (1978); *Alioto* v. *Marnell*, 402 Mass. 36, 40 (1988). The plaintiff has alleged that Frank, Jr., took the moped, but she has failed to show the existence of a dispute on the fact that he did so without his parents' permission and in direct disobedience of their rule. Frank, Jr.'s use of a minibike and moped in his yards does not show implied parental permission in view of the limits placed on that use and his violation of those restrictions on the evening in question.

To show that the parents were negligent in the supervision of their son, the plaintiff would have to show that the parents

---

[3] The plaintiff points to selective passages in the transcript of the mother's deposition as support for the facts that the parents knew that Frank, Jr., had driven the moped on the street once in the past, specifically, July 20, 1983, and that both parents were at the cottage on August 5, 1983. The plaintiff misreads the mother's unequivocal testimony. She believed that the accident happened on July 20, the only incident in which she knew (after the fact) that Frank, Jr., had used the moped without her permission or knowledge. Although the mother's memory was somewhat unclear as to whether this isolated instance occurred on July 20 or August 5, she was emphatic about the fact that on the day of the incident neither she nor the father was at the cottage.

knew that Frank, Jr., had a propensity to engage in conduct harmful to others and failed to take corrective measures despite having an opportunity to do so. "A parent has a duty to exercise reasonable care to prevent his minor child from intentionally or negligently inflicting harm on others, where the parent knows or should know of the child's propensity for a particular type of harmful conduct and has the opportunity to take reasonable corrective measures." *Alioto* v. *Marnell*, 402 Mass. at 38, citing *Caldwell* v. *Zaher*, 344 Mass. 590, 592 (1962). See also *Norlin* v. *Connolly*, 336 Mass. 553, 554 (1957); *DePasquale* v. *Dello Russo*, 349 Mass. 655, 658-659 (1965); *Sabatinelli* v. *Butler*, 363 Mass. 565, 570 (1973). While the parents knew or should have known that Frank, Jr., enjoyed riding the moped and wanted to do so whenever he could, there is nothing to show that Frank, Jr., had ever taken the moped in the past without their permission and presence.

The parents had possession and control of the moped since 1979. The son did not have permission to operate the moped, and his use of it was subject to restrictions. There was no showing that Frank, Jr., had a propensity or tendency to use the moped in violation of the limits imposed upon him by his parents. Had only these facts been presented at trial, the parents would have been entitled to directed verdicts. "The summary judgment standard, although slightly harder to meet, 'mirrors' the directed verdict standard. See the discussion in *Kaitz* v. *Foreign Motors, Inc.*, [25 Mass. App. Ct.] 198, 200, 202, 203 & n.4 (1987)." *Orfirer* v. *Biswanger*, 25 Mass. App. Ct. at 931.

*Judgments affirmed.*